IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| MATTHEW BOWMAN, on behalf of himself and all others similarly situated,<br><br>    *Plaintiff,*<br><br>v.<br><br>UNTERMAN FOR CONGRESS, INC. and BATTLEGROUND CONNECT, INC.,<br><br>    *Defendants.* | CIVIL ACTION FILE<br><br>NO. 1:20-cv-02612-JPB |

## **BRIEF IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS**

## **INTRODUCTION**

According to his Complaint, Plaintiff received one text message from Senator Renee Unterman's ("Sen. Unterman") congressional campaign, sent a one-word "stop" response, received confirmation that he would not receive any more messages from the campaign, and never received anything further. Based on these facts alone, Plaintiff literally "made a federal case out of it,"[1]

---

[1] According to *Lawtalk: The Unknown Stories Behind Familiar Legal Expressions* (Yale University Press 2011), the phrase "making a federal case out of it" was first used in the mid-1940s in a comedy sketch by Jimmy Durante and was later picked up on Milton Berle's early television show. *See*

1

retaining counsel, filing this lawsuit, and seeking to certify a class to obtain monetary relief from Sen. Unterman's campaign committee and a vendor—but he failed to properly bring this case to Court.

A single text message is not a concrete injury for purposes of standing, as the Eleventh Circuit found last year. Further, he has not properly invoked federal-court jurisdiction because the text messages about which he complains were sent with human intervention, commonly referred to as "peer-to-peer" messaging. If Plaintiff wishes to outlaw peer-to-peer text messages, he should seek the intervention of Congress, not this Court.

## PROCEDURAL BACKGROUND

Sen. Unterman was a candidate for Congress in the June 9, 2020 primary election. The primary was bitter—and marked by anonymous attacks on Sen. Unterman's appearance, ethics, and mental capacity. *See, e.g.*, Atlanta Journal Constitution, *The Jolt: A 'bimbo' eruption in a GOP congressional race* (April 20, 2020), https://www.ajc.com/blog/politics/the-jolt-bimbo-eruption-gop-congressional-race/JvEhNinODI28OcLf1EFUUL/; Charlie Harper, *The Dehumanization of Renee Unterman* (May 28, 2020),

---

Michael Pollak, N.Y. Times, *Answers to Questions about New York* (July 27, 2012), *available at* https://www.nytimes.com/2012/07/29/nyregion/answers-to-questions-about-new-york.html

https://www.georgiapol.com/2020/05/28/the-dehumanization-of-renee-unterman/   Ten days after that election was over and Sen. Unterman did not secure the Republican nomination for the general election, Plaintiff filed this lawsuit, apparently seeking to continue the attacks on Sen. Unterman.[2] [Doc. 1].

Following the filing of Sen. Unterman's motion to dismiss[3] [Doc. 9-1], Plaintiff amended his complaint, dropping Sen. Unterman individually and instead naming her campaign committee and a campaign vendor. [Doc. 10]. More than a month later, Plaintiff requested summons for the new parties [Docs. 15, 17].

## ARGUMENT AND CITATION OF AUTHORITY

A complaint must be dismissed under Fed. R. Civ. P. 12(b)(1) if it has not alleged a sufficient basis for subject-matter jurisdiction. *Stalley v. Orlando Reg'l Healthcare Sys.*, 524 F.3d 1229, 1232 (11th Cir. 2008). This

---

[2] A search of ECF does not reveal any other lawsuits Plaintiff filed against campaigns that utilized peer-to-peer text messaging—a platform that is widely used by candidates and political parties. NPR, *From Get-Out-To-Vote to Text-Out-To-Vote: The Rise of Peer-To-Peer Texting* (November 18, 2018) https://www.npr.org/2018/11/22/669591667/from-get-out-to-vote-to-text-out-to-vote-the-rise-of-peer-to-peer-texting

[3] Because the same issues arise in this motion to dismiss as in the motion to dismiss previously filed, this motion incorporates by reference Exhibits C and D from that motion, [Docs. 9-4 and 9-5].

Court must address threshold issues of jurisdiction[4] and standing before considering dismissal on the merits. *Georgia Shift v. Gwinnett Cty.*, No. 1:19-cv-01135-AT, 2020 U.S. Dist. LEXIS 31407, at *7 (N.D. Ga. Feb. 12, 2020).

Fed. R. Civ. P. 12(b)(1) allows facial attacks and factual attacks to subject matter jurisdiction:

> 'Facial attacks' on the complaint 'require the court merely to look and see if the plaintiff has sufficiently alleged a basis of subject matter jurisdiction[.] . . . 'Factual attacks,' on the other hand, challenge the existence of subject matter jurisdiction in fact, irrespective of the pleadings, and matters outside the pleadings, such as testimony and affidavits, are considered."

*Lawrence v. Dunbar*, 919 F.2d 1525, 1528-29 (11th Cir. 1990) *citing Mortensen v. First Fed. Sav. & Loan Ass'n*, 540 F.2d 884, 891 (3d Cir. 1977).

Finally, to survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6), a complaint must "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The complaint must show "more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal,* 556 U.S. 662, 677 (2009). While this Court must assume the veracity of well-pleaded factual allegations, it need not accept legal conclusions when

---

[4] While not specifically pleaded in Plaintiff's Complaint, this Court has federal-question jurisdiction (28 U.S.C. § 1331) over claims arising under the Telephone Consumer Protection Act (TCPA). *Mims v. Arrow Fin. Servs., LLC*, 565 U.S. 368, 387, 132 S. Ct. 740, 753 (2012).

they are "couched as [] factual allegation[s]." *Id*. at 678-79. Together with the complaint, this Court may consider any matters appropriate for judicial notice. *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007).

## I. This Court lacks jurisdiction because Plaintiff has not alleged a sufficient injury.

In order to invoke this Court's jurisdiction, Plaintiff must show there is a case or controversy under Article III of the Constitution. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560, 112 S. Ct. 2130, 119 L. Ed. 2d 351 (1992). Specifically, "[t]he plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547, 194 L. Ed. 2d 635 (2016) citing *Lujan*, 504 U.S. at 560-61; *Jacobson v. Fla. Sec'y of State*, No. 19-14552, 2020 U.S. App. LEXIS 28078, at *14 (11th Cir. Sep. 3, 2020). An injury in fact must also be concrete, meaning it "must be 'de facto'; that is, it must actually exist." *Spokeo, Inc.*, 136 S. Ct. at 1548.

Plaintiff's sole allegation of injury is the receipt of a text message[5] from Sen. Unterman's campaign followed by a single message confirming he would

---

[5] An audit of Battleground Connect's records demonstrates that only a single text message from Sen. Unterman's campaign was sent to Plaintiff's phone. [Doc. 9-5, ¶¶ 7-9].

not receive further messages after Plaintiff requested to be removed from the texting list. [Doc. 10, ¶¶ 14, 16 and p. 17]. Plaintiff claims that this brief interaction caused a variety of harms to his phone, including depleting its battery and taking up storage space, and that he suffered injuries such as his "lost time" to draft and send a one-word response to the only text message he received from the campaign. [Doc. 10, ¶ 27].

When reviewing the alleged injury of another recipient of a single text message—this one from an attorney, not a congressional campaign—the Eleventh Circuit determined that the receipt of a single text message was not a sufficiently concrete harm to constitute an injury for purposes of standing under the TCPA:

> [Plaintiff] has not alleged anything like enjoying dinner at home with his family and having the domestic peace shattered by the ringing of the telephone. Nor has he alleged that his cell phone was searched, dispossessed, or seized for any length of time. **[Plaintiff's] allegations of a brief, inconsequential annoyance are categorically distinct from those kinds of real but intangible harms.** The chirp, buzz, or blink of a cell phone receiving a single text message is more akin to walking down a busy sidewalk and having a flyer briefly waived in one's face. Annoying, perhaps, but not a basis for invoking the jurisdiction of the federal courts.

*Salcedo v. Hanna*, 936 F.3d 1162, 1172 (11th Cir. 2019) (emphasis added). Further, as another court found, a text message confirming that an individual was unsubscribed is also not the basis for an injury, because it "did

not constitute unsolicited telemarketing" and was not the type of "invasion of privacy contemplated by Congress in enacting the TCPA." *Ibey v. Taco Bell Corp.*, No. 12-CV-0583-H (WVG), 2012 U.S. Dist. LEXIS 91030, at *8 (S.D. Cal. June 18, 2012).

Plaintiff has not alleged anything approaching an injury sufficient under binding Eleventh-Circuit precedent. A single text message, followed by his request to be unsubscribed, and then prompt confirmation—with no further messages—is not a sufficiently weighty injury to constitute a concrete harm that can invoke the jurisdiction of this Court for a violation of the TCPA. *Salcedo*, 936 F.3d at 1173. This Court should dismiss Plaintiff's Complaint on this basis alone.

## II. Plaintiff fails to invoke this Court's jurisdiction because he does not plead that a peer-to-peer text message system violates the TCPA.

Plaintiff has not adequately pleaded that a peer-to-peer text message system violates the TCPA. 47 U.S.C. § 227(b)(1)(A) prohibits "using any automatic telephone dialing system or an artificial or prerecorded voice." It also prohibits "initiat[ing] any telephone call to any residential telephone line using an artificial or prerecorded voice to deliver a message without the prior express consent of the called party[.]" 47 U.S.C. § 227(b)(1)(B). The TCPA provides vendors with three options: "[t]hey may obtain consumers' consent

to robocalls. They may connect each potential customer with a human representative. Or they may face liability under the Act." *Glasser v. Hilton Grand Vacations Co., LLC,* 948 F.3d 1301, 1312 (11th Cir. 2020). Plaintiff's sole theory is that, because an unsubscribed message was returned immediately, therefore the system used must have been automatic. [Doc. 10, ¶¶ 14-17].

Battleground Connect, the vendor utilized by Sen. Unterman's campaign, uses a technology called peer-to-peer text messaging.[6] What We Do, https://www.battlegroundconnect.com/services (noting it provides "Peer to Peer Texts"); [Doc. 9-5 at ¶¶ 3-5]. Each text message sent by a peer-to-peer system requires human interaction. *Id.* at ¶ 3. The universe of phone numbers utilized for Sen. Unterman's campaign was obtained from a list of registered voters based on publicly available information—in other words, it was not collected randomly. *Id.* at ¶ 6.

The fact that a human sends each text message is critically important. In *Glasser*, the Eleventh Circuit found that a system is not an "automatic" dialing system for purposes of the TCPA when "the system requires a

---

[6] A factual attack on subject-matter jurisdiction can include a review of declarations that go to the facts necessary to support this Court's jurisdiction. *Lawrence*, 919 F.2d at 1529.

8

human's involvement before it places any calls." *Id*. Further, the Court found a key factor in the system not being an automatic system for purposes of the TCPA was that "[h]uman intervention [was] necessary." *Id*. Just like the system that was not an automatic dialing system in *Glasser*, the text messages sent to Plaintiff were sent only with human involvement.[7]

Despite Plaintiff's other claim that the text messages were sent using a "random or sequential number generator," [Doc. 10, ¶ 23], the messages were in fact targeting particular individuals based on a voter file. [Doc. 9-5 at ¶ 6]. Because the text messages were targeting particular individuals, this is an independent reason they were not an automated dialing system of the type prohibited by the TCPA. *See Smith v. Truman Rd. Dev., LLC*, 4:18-cv-00670-NKL, 2020 LEXIS 74330 at *26-*27 (W.D.Mo. April 28, 2020) (collecting cases).

Plaintiff speculates that the original message he received was sent automatically. But this Court does not have subject-matter jurisdiction over a system that is separate and independent from the type prohibited by the

---

[7] The records attached to Mr. Lancaster's declaration further indicate that the audit logs demonstrate that he personally sent the text message to Plaintiff and, after Plaintiff's request, he did not receive any further text messages from Sen. Unterman's campaign. [Doc. 9-5 at ¶¶ 7-9].

9

TCPA. This Court should dismiss Plaintiff's Complaint for lack of subject-matter jurisdiction.

## CONCLUSION

Plaintiff is apparently seeking to continue a political battle for an election that the people of Georgia's Seventh Congressional District decided on June 9. Plaintiff has not alleged an injury sufficient to invoke this Court's jurisdiction, and he has misconstrued the law to pursue a false narrative. For all the foregoing reasons, this Court should dismiss Plaintiff's Amended Complaint with prejudice.

Respectfully submitted this 2nd day of October, 2020.

**TAYLOR ENGLISH DUMA LLP**

*/s/ Bryan P. Tyson*
Bryan P. Tyson
Georgia Bar No. 515411
btyson@taylorenglish.com
Loree Anne Paradise
Georgia Bar No. 382202
lparadise@taylorenglish.com
1600 Parkwood Circle, Suite 200
Atlanta, GA 30339
Telephone: 678.336.7249

*Attorneys for Defendants*

# CERTIFICATE OF COMPLIANCE

Pursuant to L.R. 7.1(D), the undersigned hereby certifies that the foregoing BRIEF IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS has been prepared in Century Schoolbook 13, a font and type selection approved by the Court in L.R. 5.1(B).

*/s/ Bryan P. Tyson*
Bryan P. Tyson